IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH WILKERSON                      *
                Plaintiff,
        v.                                     *  CIVIL ACTION NO. DKC-06-575

OFFICER S.A. TURNER              *
OFFICER E.M. HESS
WARDEN R. SOWERS[1]              *
                Defendants.
                                        ***

**MEMORANDUM**

I.     Background

In this 42 U.S.C. § 1983 complaint for damages Plaintiff sets out the following allegations. On the morning of November 7, 2005, he submitted to a strip search prior to being transported from the Roxbury Correctional Institution ("RCI") to the Maryland Correctional Institution ("MCIH") for a tooth x-ray. Officer Turner told him to bend over and attempted to perform an anal cavity search. He challenged Turner's order and was: ordered to put his clothes back on; handcuffed behind his back; and escorted to a cell. He was then thrown into the cell by Officer Turner, who assaulted him about the face and ribs. Officer Hess threw him onto the bed in the cell and put his knee on his chest and neck. He suffered a black left eye and a very sore sternum.[2]

II.     Dispositive Filings

Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Paper No. 14. Plaintiff has filed a Motion to Deny the summary judgment motion. Paper No. 17.

---

[1]     The Clerk shall amend the docket to reflect the correct spelling of the name of Defendants Turner and Sowers.

[2]     Attached to the complaint are various adjustment records, formal and informal prison grievances, medical records, and a letter from an attorney regarding the allegations raised herein. Paper No. 1 at Attachments.

The case is ready for the Court's consideration. Oral hearing is not deemed necessary. *See* Local Rule 105.6. (D. Md. 2004).

III.    Standard of Review

       Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

       Motion for Summary Judgment

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to

confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Eighth Amendment

An Eighth Amendment claim of excessive force raised by a prison inmate against correctional officers involves analysis of both objective and subjective elements. *See Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996). The objective element is analyzed to determine whether the officers' actions were harmful enough to offend contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Factors which are pertinent to this inquiry include the extent of injuries suffered by the inmate, the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by prison staff, and any efforts on the part of staff to temper the severity of their response. *See Hudson*, 503 U.S. at 7; *Whitley* v. *Albers*, 475 U.S. 312, 321 (1986). The core judicial inquiry when analyzing the subjective element is to review "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 6-7 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).

While the prisoner's injury need not be significant to violate the Eighth Amendment, something more than a *de minimis* injury is required in order to prove that excessive force was used.[3] *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth

---

[3] When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in the medical records generated shortly after the incident; and (4) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident. *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley v. Hejirika*, 134 F.3d at 634; *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir.); and *Norman*, 25 F.3d at 1264.

Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind.")[4]

IV.   Analysis

The following facts are presented by Defendants. On the morning of November 7, 2005, Defendant Hess was assigned to transport Plaintiff from RCI to MCIH for x-rays. Paper No. 13, Ex. 2, Hess Decl. Per institutional directive, any inmate departing RCI for any reason must undergo a strip search, including an inspection of body cavities. *Id.*, Ex. 1. Plaintiff refused to "reveal his anus to Hess for a visual inspection." *Id.*, Ex. 2, Hess Decl. Defendant Turner, hearing Plaintiff become very loud in the "strip room," went to assist Hess and observed Plaintiff "yelling" at Hess. *Id.*, Ex. 3, Turner Decl.

After Plaintiff refused to comply with the strip search procedures, Hess and Turner contacted the shift commander, who directed them to escort Plaintiff to the Administrative Segregation Isolation Area ("ASIA"). *Id.*, Exs. 2 & 3. Hess and Turner, along with Officer Brian Carter, escorted Plaintiff to ASIA, placed him in a cell, and removed his handcuffs through the slot in the cell door. *Id.* Hess and Turner maintain that neither of them entered the cell or assaulted Plaintiff. *Id.*

Defendants state that on the same date Plaintiff filled out a sick-call request form to be seen by medical personnel and was examined by Nurse Black. *Id.*, Ex 1. Plaintiff claimed he had been assaulted by officers and complained of pain to the left side of his head, the mid-chest area, and the left lower side. Paper No. 14, Ex. 1 at 14. Nurse Black noted that Plaintiff's cheek or temple area

---

[4] Even if a prisoner's injuries are *de minimis*, he may still recover if "extraordinary circumstances" are present. *See Norman*, 25 F.3d at 1263. Extraordinary circumstances are present when the force used is "diabolic," "inhuman," or repugnant to the conscience of mankind, or the pain itself constitutes more than *de minimis* injury. *Id.*, at 1263, and n. 4. Under such circumstances, even relatively minor injuries could constitute excessive force in violation of the Eighth Amendment.

had a "reddened spot" and that there was "slight redness" to both wrists due to handcuffing. *Id*. Nurse Black observed no redness or injury to Plaintiff's chest or back. *Id*. She prescribed Motrin and recommended an ice pack for Plaintiff's wrists. *Id*., Ex. 1 at 14. Plaintiff was photographed at the time of his examinations. *Id*., Ex. 1 at 15-18.

On November 8 and December 30, 2005, chest x-rays were conducted because of Plaintiff's complaint of pain in his sternum. Also, on December 30, 2005, an electrocardiogram ("EKG") was taken. Neither x-ray nor the EKG revealed evidence of any fracture. *Id*., Ex. 1 at 22-24. The November 8, 2005 x-ray, however, revealed moderate soft tissue swelling of the upper third of the sternum. *Id*. The swelling had apparently resolved by the time December 30, 2005 follow-up x-ray was taken. *Id*.

Plaintiff was issued a notice of infraction for his alleged refusal to submit to the strip search. He appeared before a hearing officer and pled guilty to the violation on November 9, 2005. The hearing officer's sanction of ninety days in segregation was reviewed and approved by Warden Sowers on November 28, 2005. *Id*., Ex. 1 at 31-35.

Plaintiff raised a complaint about the incident with the Inmate Grievance Office, which advised him that he must first present his complaint through the administrative remedy procedure. *Id*., Ex. 1 at 37. He did file a remedy, but his complaint was already being investigated by the Internal Investigative Unit ("IIU") which, according to Defendants, superceded the remedy investigation. *Id*., Ex. 1 at 38. The IIU investigator closed the inquiry without action, finding there were inconsistencies in the accounts presented by Plaintiff. *Id*., Ex. 1 at 7-12.

In his Motion to Deny Plaintiff states that there were five other RCI inmates in the strip room. Paper No. 17. He asks that summons be issued for various officers and inmates. *Id*. Plaintiff also asks that certain questions be propounded to Defendants Hess and Turner and contends that

certain information provided by Defendant Hess was not true, *e.g.* his entry into the cell and the continuation of the strip searches. Paper No. 17. Plaintiff attaches medical assignment entries which essentially show that during the month of November 2005, he was restricted from recreational or work activities involving his upper body. *Id*.

The parties agree that on November 7, 2005, a strip search was conducted and Plaintiff balked at having an anal cavity search. They also tacitly agree that no force was applied in the strip search area when Plaintiff refused to submit to the full search and that Plaintiff did not take any physical action against officers while in the strip search area or in his cell. The parties, however, totally dispute the degree of force used or, for that matter, whether any force was applied when Officers Turner and Hess later placed Plaintiff into a cell in ASIA. Plaintiff maintains that he was thrown into a cell where Turner assaulted him about his face and ribs and Hess assaulted him by putting his knee in his chest and neck. Both Turner and Hess, through the submission of personal declarations, deny entering the cell or assaulting Plaintiff.

Further, Defendants claim that Plaintiff's injuries were *de minimis* in nature. The Court observes, however, that while a nurse saw Plaintiff on the date of the incident and observed only redness to the left side of his face, temple, and wrists, Plaintiff was immediately referred for a chest x-ray due to his complaints of sternum pain. A November 8, 2005 x-ray revealed *moderate* soft tissue swelling ("STS") of the upper third of Plaintiff's sternum. (emphasis added). Plaintiff was taken off all activities which would involve the use of his upper body for the month of November 2005. A follow-up x-ray conducted on December 30, 2005, showed no significant STS.

The Court finds there are disputes as to (1) what, if any, force was applied by Officers Turner and Hess and (2) the seriousness of Plaintiff's injuries.[5] These disputes are sufficiently

---

[5] The Court cannot state that Plaintiff's objective injuries are consistent with the affirmations presented by Defendants Turner and Hess.

material in nature and involve credibility determinations. Accordingly, Defendants Turner and Hess's Motion to Dismiss or, in the Alternative, Motion for Summary shall be denied.[6] Plaintiff's Motion to Deny shall be granted.

V. Conclusion

For the aforementioned reasons, Defendant Sower's Motion to Dismiss is granted. Defendants Turner and Hess's Motion to Dismiss or for Summary Judgment shall denied. Plaintiff's Motion to Deny shall be granted.[7] A separate Order follows.


Date:    8/29/06                                               /s/
                                                    DEBORAH K. CHASANOW
                                                    UNITED STATES DISTRICT JUDGE

---

[6] Where, as here, Plaintiff is alleging that a supervisory official is liable, he must show that the official was personally involved in the deprivation of his rights or that they were constructively aware of the alleged unconstitutional behavior and, in effect, tacitly authorized the action. *See Carter v. Unknown Agents of the City of Danville Police Dep't.*, 164 F. 3d 215, 220-21 (4th Cir. 1999); *Shaw v. Stroud*, 13 F.3d 791, 798-800 (4th Cir. 1994); *see also Miltier v. Beorn*, 896 F.2d at 854. Plaintiff has not proven his case against the Warden by establishing Defendant Sowers's personal involvement in the alleged unconstitutional acts. Therefore, Sowers's Motion to Dismiss shall be granted.

[7] Plaintiff shall be afforded the opportunity to file a motion for appointment of counsel.